# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

JANET L. SMITH,

      Plaintiff,

      v.                                     Case No. 03-C-0103

DEPARTMENT OF CORRECTIONS OF THE
STATE OF WISCONSIN,
DAWN NELSON, TIMOTHY PETERSON,
MICHAEL CLAUS, LEESA WIEDHOLZ-ABBOTT,
DANIEL BUCHLER, EDWARD HERMANSEN,
PATRICIA LASOTA, PAMELA WALLACE,
LINDA MILLIREN, and DALE DEBEERS,

      Defendants.

---

# DECISION AND ORDER

---

Plaintiff Janet L. Smith filed this action on February 4, 2003, against the defendants, alleging that she was subjected to a hostile work environment sexual harassment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. The plaintiff also alleges the following state law claims: 1) sexual and marital status discrimination; 2) retaliation/excessive discipline; 3) prima facie harassment; 4) general negligence; 5) false imprisonment; 6) assault; 7) battery; 8) negligent infliction of mental distress; 9) intentional infliction of mental distress; 10) invasion of privacy; and 11) breach of confidentiality and professional negligence.

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the matter arises under federal statutes. Venue is proper under 28 U.S.C. § 1391. The case was assigned according to the random assignment of civil cases pursuant to 28 U.S.C. § 636(b)(1)(B) and General Local Rule 72.1 (E.D. Wis.). The parties have consented to

United States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General Local Rule 73.1 (E.D. Wis.).

The defendants have filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Docket #72). The plaintiff opposes the motion which is ready for resolution and will be addressed herein.

## Standard for Summary Judgment

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); McNeal v. Macht, 763 F. Supp. 1458, 1460-61 (E.D. Wis. 1991). "Material facts" are those facts that under the applicable substantive law "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over "material facts" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The burden of showing the needlessness of a trial – (1) the absence of a genuine issue of material fact; and (2) an entitlement to judgment as a matter of law – is upon the movant. In determining whether a genuine issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. Anderson, 477 U.S. at 267; see also, Celotex Corp., 477 U.S. at 324; Fed. R. Civ. P. 56(e) ("When a summary judgment motion is made and supported as provided in [Rule 56(c)], an adverse party may not rest upon the mere allegations or denials of the adverse

party's pleadings, but the adverse party's response, by affidavit or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial").  "Rule 56(c) mandates the entry of summary judgment, . . . upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial."  Celotex Corp., 477 U.S. at 322 (emphasis added).  In ruling on a motion for summary judgment, all inferences are taken in the light most favorable to the nonmoving party.  Matter of Wade, 969 F.2d 241, 245 (7th Cir. 1992).

At the outset, the court notes that the parties' submission of a joint statement of stipulated facts was very helpful in resolving the pending motion.  The parties also submitted additional proposed findings of fact.  The defendants assert that the plaintiff failed to comply with the requirements of Civil L. R. 56.2(a) because she did not submit any response to the defendants' proposed findings of fact.  They point out that, pursuant to Civil L. R. 56.2(e), in deciding a motion for summary judgment, the court "must conclude that there is no genuine material issue as to any proposed finding of fact to which no response is set out."

The plaintiff asserts that because the defendants set forth specific responses to the plaintiff's proposed findings of fact, "it seems they have waived the hyper-technical application of this Rule." (Plaintiff's Letter of February 2, 2005, at 1).  She also states that Civil L. R. 7.3 allows the court to order different or additional provisions regarding motion practice.

In this case, the parties were advised to follow the local rules regarding briefing of any summary judgment motions.  See Court's Order of September 21, 2004, at 1.  The parties did not request any modification of the local rules and none was ordered.  The summary judgment motion procedure set out in Civil L. R. 56.2 is designed to facilitate the orderly resolution of factual disputes.  Requiring a response to proposed findings of fact filed by a

party enables the court to more readily determine those facts that are in dispute and those that are not. The local rules apply to all litigants, including the plaintiff. Accordingly, the plaintiff was required to file responses to the defendants' proposed findings of fact.

The court notes, however, that some of the defendants' proposed findings of fact are based on hearsay (see e.g. Defendants' Proposed Findings of Fact ¶ 16 [first sentence]), are conclusory or fail to include a citation to the record. (See e.g. Defendants' Proposed Findings of Fact ¶ 44). Such proposed findings do not raise disputed issues of material fact. To the extent that the defendants' proposed findings of fact meet the requirements of Fed. R. Civ. P. 56, they will be considered by the court in ruling on the summary judgment motion. Proposed facts submitted by any party grounded on affidavits which are not based on personal knowledge or which set forth facts which would not be admissible in evidence are not properly considered on summary judgment. Such proposed facts have not been included in the relevant undisputed facts in this case

### Relevant Undisputed Facts[1]

Plaintiff Janet Smith began working for the Wisconsin Department of Corrections in June 2000, as a program assistant at the Racine Youthful Offender Correctional Facility (RYOCF). Her immediate supervisor was Linda Milleren. Her employment with RYOCF continued until December 2003, when she was terminated. The plaintiff was on medical leave for almost two years prior to her termination from January 9, 2002, until December 2003. She is currently employed with the Wisconsin Department of Public Instruction in Brookfield, Wisconsin, as a program assistant. The plaintiff was divorced from her husband, Todd Smith,

---

[1]As a general matter, unless accompanied by citation, the relevant facts are taken from the stipulated facts and from the parties' proposed findings of fact which are not disputed. Citations to sources of quoted excerpts have been included even when those excerpts are undisputed.

in 2000. They were married in 1987. The plaintiff has two children from that marriage, Lucas and Ashley.

Defendant Dale DeBeers was a correctional officer at RYOCF during the time the plaintiff was employed there. He and the plaintiff were co-workers. He did not supervise the plaintiff.

In October 2000, defendant DeBeers asked the plaintiff for a date and they went to dinner on New Year's Eve. In December, they met at a mall and went shopping together. After New Year's Eve, defendant DeBeers gave the plaintiff a gift certificate, but she did not accept it. Sometime in 2001, he went to her house to watch a movie and on another occasion she went to his house to watch a movie. On a few Sundays, he attended her church, but was not accompanied by her. In June 2001, defendant DeBeers dog sat for one week while the plaintiff attended a church retreat. She gave him a house key and he entered her house at least once a day to feed and walk her dogs.

On October 5, 2001, the plaintiff had an endoscopy and colonoscopy on an out-patient basis. She was given an intravenously-administered anesthetic as part of these procedures. She is allergic to the gaseous type. The plaintiff also had a polypectomy performed at the time. All three procedures were invasive. The plaintiff's grandmother took her to the hospital for the medical procedures and took her home afterwards. The plaintiff returned home around 7:00 p.m. on October 5, 2001. The plaintiff's release was conditioned upon attendance/supervision of a responsible adult.

The plaintiff's grandmother had to leave early so the plaintiff told her son, Lucas, to call defendant DeBeers and ask him to come to her home to help her out that night. Lucas called defendant DeBeers and he came to the plaintiff's home at about 8:00 p.m. Defendant DeBeers attended to the plaintiff's children while the plaintiff was under the influence of pain

medication and was recovering from the procedures and anesthesia. The plaintiff appeared to be cognitive and alert to defendant DeBeers.

After he put the plaintiff's children to bed, he entered the plaintiff's bedroom and the plaintiff and defendant DeBeers had sexual contact. During the sexual contact, the plaintiff uttered her ex-husband's name and then defendant DeBeers immediately got out of bed, got dressed, left the plaintiff's home and went to get gas for his car. Defendant DeBeers decided that he needed to return to the plaintiff's house. After he returned, he talked to the plaintiff briefly and then left.

The plaintiff could not consent to the sexual contact with defendant DeBeers, given her state of diminished capacity. Defendant DeBeers stated in his testimony, given earlier at a hearing in Racine County Case No. 02-CV-16, that three people had to assist the plaintiff to drink a glass of water that night. Defendant DeBeers and the plaintiff's children, Ashley and Lucas, had to help the plaintiff because she had no lip control to drink properly. Defendant DeBeers knew that the plaintiff had been on some type of medication.

Plaintiff's expert anesthesiologist, Thomas Wiggins, M.D. opined that on October 5, 2001, the plaintiff received a large dose of fentanyl and versed, a general anesthetic, and that for the plaintiff's size and weight, she was probably not fully recovered from the effects of the general anesthesia for several days. All of the plaintiff's experts have opined that the plaintiff could not give consent to any sex with defendant DeBeers.

Defendant DeBeers acknowledged that there was never any sexual contact between the plaintiff and him prior to October 5, 2001, nor has there ever been any since. Therefore, it was the first and only sexual contact with the plaintiff by defendant DeBeers.

On Monday, October 8, 2001, the plaintiff returned to work. She went to Dawn Nelson's office and told her about the events of October 5, 2001, with defendant DeBeers.

The plaintiff considered Ms. Nelson to be a friend. Ms. Nelson was a social worker at RYOCF, but she did not supervise the plaintiff. She was never the plaintiff's treating social worker or counselor. The plaintiff told Ms. Nelson that defendant DeBeers had sexually assaulted her.[2] Ms. Nelson was responsible for conducting a sexual offender treatment class designed to provide sensitivity training for offenders about victims' responses and feelings about being assaulted. The plaintiff knew that Ms. Nelson taught that class at the time she went to confide in her in October 2001.

That same day, October 8, 2001, the plaintiff told Christine Vena that defendant DeBeers had sexually assaulted her on the previous Friday. Ms. Vena was a co-worker and a program assistant at RYOCF, but she was not the plaintiff's supervisor.

On Monday, October 15, 2001, Ms. Nelson went to Pamela Wallace, the security director for RYOCF, and reported what she knew about the plaintiff and defendant DeBeers' situation. Ms. Nelson decided to report the incident because she believed defendant DeBeers was at risk for self-injury. After the meeting with Ms. Nelson, Ms. Wallace telephoned Warden Daniel Buchler at his home to tell him what Ms. Nelson had told her. Ms. Wallace prepared written notes of her meeting with Ms. Nelson and sent them by e-mail to Mr. Buchler.

In the e-mail dated October 15, 2001, Ms. Wallace advised the warden: "I am recommending that the investigators assigned to this be from outside of RYOCF and further away [sic] than RCI." (Deposition of Pamela Wallace [Wallace Dep.] at 20-21 & Dep. Exh. 2). There was no additional taxpayer cost to have the investigation done outside of RYOCF, other than minimal expenses for such things as mileage.

---

[2]The parties disagree as to whether or not the plaintiff asked Ms. Nelson to keep the information confidential.

The next morning, Mr. Buchler and Ms. Wallace discussed the information Ms. Nelson had provided regarding the plaintiff and defendant DeBeers. Mr. Buchler decided that he wanted an investigation of the alleged incident to learn whether there had been a violation of any work rules. The Department of Corrections (DOC), the employer, employed four women psychologists at the time it conducted the investigation of the incident involving the plaintiff – Dr. Susan Curran, Dr. Leesa Wiedholz-Abbott , Dr. Pam Mahnke and Dr. Tammy Zimmel. Warden Buchler decided that this incident should be investigated and he chose Tim Peterson, RYOCF business director, and Captain Michael Claus to conduct the investigation. Warden Buchler briefed them on the information that he had at the time.

If the sexual assault had occurred, it would be a violation of DOC Work Rule #11: "Violating a criminal statute or ordinance, or other regulation having the force and effect of law." This is true whether it happened on the premises or off. This was a serious and sensitive matter. If the assault did occur, a correctional officer who is supervising criminals and working with them on improving their behavior and being a role model to them allegedly has committed an act the same or worse than they committed and that is a problem in the workplace. The plaintiff and defendant DeBeers worked in fairly close proximity, so if this alleged assault did occur, Warden Buchler wanted to determine whether there was other workplace conduct that created a hostile work environment for the plaintiff.

Captain Claus and Mr. Peterson began preparing a series of questions for the plaintiff. Captain Claus and Mr. Peterson collaborated in drafting the questions, reviewing them and deeming them appropriate for what they were going to do. They stated that they had to create a line of questioning that unfortunately could be uncomfortable, but yet necessary to determine the facts. "With only her side of the story versus his without any witnesses, we knew we had to create a line of questioning that would be uncomfortable yet necessary to our

case." (Deposition of Timothy Peterson [Peterson Dep.] at 17, Exh. 7, E-mail memo from Mr. Peterson to Edward Hermansen dated March 5, 2002).

Defendant DeBeers gave $20,000.00 to the plaintiff over the incident. Early in the investigative history of the underlying events, he told RYOCF investigators that the money was a voluntary out-of-court settlement. Defendant DeBeers told investigators that he knew what he did was wrong. Defendant DeBeers loaned the plaintiff his video camera to use to videotape his responses to a series of questions regarding the events of October 5, 2001.

The plaintiff asked her employer, through its warden, defendant Buchler, to schedule or transfer Mr. DeBeers to third shift, so that the plaintiff could avoid his presence in her workplace. Defendant DeBeers requested a work transfer on Monday, October 15, 2001, and his request for a transfer was approved. However, he was never transferred.

On October 22, 2001, Captain Claus and Mr. Peterson began their investigation by interviewing Dawn Nelson, Christine Vena and defendant DeBeers. Ms. Nelson denied being the plaintiff's friend when questioned by the RYOCF investigators.

On October 23, 2001, Captain Claus and Mr. Peterson conducted an investigatory interview of the plaintiff. Rod Duvnjak, a union representative provided for the plaintiff, attended the interview. The investigation was done in a closed room in the presence of these three male RYOCF employees. The door to the investigation room locked automatically. The plaintiff was never told she could not leave the room, nor did she ever ask to leave. This investigation came as a surprise to the plaintiff as no warning was given to her that an investigation had resulted from her talking to Ms. Nelson about her having been sexually assaulted in her home.

Captain Claus and Mr. Peterson asked the plaintiff a series of questions about the October 5, 2001, incident at her home with defendant DeBeers, about the money he allegedly

gave her and about the videotape. She was also asked about her mental state resulting from the assault. The only other questions of a personal nature asked of the plaintiff were about her marital status, the length of time she was married, the number and ages of children and whether it was difficult financially to be a single parent.[3] She was not asked any questions about her sexual orientation, her medical history, her mental history, or her dating/social habits, other than as it pertained to defendant DeBeers.

During the interview, the plaintiff denied receiving any money from defendant DeBeers. She further claimed that she did not recall videotaping defendant DeBeers "confessing" to the alleged sexual assault. (Affidavit of Timothy Peterson [Peterson Aff.] ¶ 12). The plaintiff did not share the information about the $20,000.00 settlement from defendant DeBeers during the October 23, 2001, investigation. Eventually, others at RYOCF knew about the assault, as well as the accusations that the plaintiff was a "blackmailer" as a result of that first disclosure.

On October 24, 2001, the plaintiff had an episode at work. The staff called 911 and the plaintiff was taken to the hospital. Dr. Leesa Wiedholz-Abbott told the plaintiff she should go to the hospital. Dr. Wiedholz-Abbott was employed by the Wisconsin DOC as a psychologist at RYOCF. Her duties involved treatment of offenders, but not the staff. The plaintiff returned to work on November 5, 2001, after Warden Buchler received a letter from Jean D. Harlan, Ph.D., who had been treating the plaintiff, assuring him that the plaintiff was fit to return to work.

During the plaintiff's recuperation time, she reported the alleged assault to the Racine County Sheriff's Department. Warden Buchler was contacted by Detective Art Rouse

---

[3]The interview was taped and transcribed. The questions and the plaintiff's answers are set forth in Exhibit F attached to the affidavit of Timothy Peterson.

regarding the investigation being conducted at RYOCF. The plaintiff had turned over a videotaped "confession" by defendant DeBeers and $20,000.00 in cash to the Racine County Sheriff's Department.

Following the initial investigatory interview of the plaintiff on October 23, 2001, the DOC engaged in several more follow-up investigatory interviews of the plaintiff on November 13, November 15, and November 29, 2001, regarding the first interview. The plaintiff was sent notice of a predisciplinary meeting which was held on November 15, 2001. The interview was a part of a disciplinary investigation because the investigators believed that the plaintiff had not given them truthful information on October 23, 2001. This interview with the plaintiff on November 15, 2001, was conducted by Captain Claus and Mr. Peterson. Officer Lamont Marshall, the plaintiff's union representative, also attended. The plaintiff was only asked a few questions, all of which related to the payment of $20,000.00 and the videotape. They were not personal questions and the plaintiff refused to answer any of them.

After this interview, Captain Claus and Mr. Peterson reported to the warden the disposition of the various interviews that they had conducted. They concluded that the plaintiff provided inaccurate, untruthful and incomplete information during the course of the investigation and, therefore, she was in violation of DOC Work Rule #6, "Failing to provide truthful, accurate, and complete information when required."

Warden Buchler consulted with legal counsel in the Department of Corrections' central office in Madison, Wisconsin, and, based on the advice he received, decided to discipline the plaintiff for violating DOC Work Rule #6. On November 30, 2001, Warden Buchler sent the plaintiff a written reprimand for violating the work rule. The DOC reprimanded the plaintiff for providing untruthful information during the investigation in violation of DOC Work Rule #6.

The district attorney decided not to file any criminal charges against either defendant DeBeers or the plaintiff.

The plaintiff's expert, Linda Ledray, RN, PhD, SANE-A, LP, FAAN, has opined: "This case has clearly involved a breach of patient confidentiality by the facility social worker[,] to whom Ms. Smith disclosed the sexual assault in confidence. This breach of confidentiality then resulted in her being victimized again by the Racine Youthful Offender Correctional Facility warden who inappropriately then interrogated her about her personal life as well as the sexual assault." (Opinion of Dr. Linda Ledray, September 15, 2003, at 009). When asked if Ms. Nelson's status as a friend of the plaintiff would change the obligation of confidentiality, Dr. Ledray opined that as long as the plaintiff's understanding was that Ms. Nelson was a social worker at the time the plaintiff disclosed the confidences about her sexual assault to Ms. Nelson, Ms. Nelson's duty of confidentiality attached, regardless of the fact that Ms. Nelson was also a friend.

Dr. Ledray also opined that the interrogation by the RYOCF would likely add additional fear, anxiety, stress and trauma to the trauma the plaintiff was already experiencing as a result of the sexual assault, making it more likely that she would experience post-traumatic stress disorder (PTSD) of a prolonged nature. In Dr. Ledray's opinion, the plaintiff would feel very threatened by this interrogation and not be willing, or possibly able, to disclose accurate information which she might fear would be turned against her. She further opined that it is reasonable and likely that the plaintiff went into a self-protective mode, utilizing denial and lack of self-disclosure as her primary defense mechanisms. She said that this is especially reasonable since the interrogation occurred in a correctional facility and was conducted by male correctional officers, including her ultimate superior, the warden. Dr. Ledray opined that

the plaintiff was victimized again by the investigation by RYOCF and should not have been questioned about the incident at all.

Ze've Bar-av, Ph.D., the plaintiff's expert, has opined that the plaintiff's behavioral symptoms are consistent with Post Traumatic Stress Disorder [PTSD] and deep depression. According to Dr. Bar-av, the plaintiff suffered debilitating mental distress as a result of the conduct of the defendants and has been treating for her distress. He stated that the plaintiff suffered emotional trauma from the assault, the workplace investigation and the unfounded accusations originating in the workplace. Dr. Bar-av further opined that the plaintiff will need several years of psychiatric/psychological treatment.

## ANALYSIS

### Federal Claim

### Count I - Hostile Work Environment/Sexual Harassment

Title VII prohibits sexual harassment that takes the form of a hostile work environment. Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57 (1986); Cerros v. Steel Technologies, Inc., 288 F.3d 1040, 1045 (7th Cir. 2002). A "hostile work environment is created by conduct which has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." Cooke v. Stefani Management Services, Inc., 250 F.3d 564, 560 (7th Cir. 2001). The "statute does not reach genuine but innocuous differences in the ways men and women routinely interact with members of the same sex, and the opposite sex. The prohibition of harassment . . . forbids only behavior so objectively offensive as to alter the 'conditions' of the victim's employment." Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 81 (1998).

A hostile work environment is one that is both objectively and subjectively[4] offensive. Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998). Thus, to demonstrate harassment that rises to the level of a statutory violation, the plaintiff must establish that "his or her work environment was both subjectively and objectively offensive; 'one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.'" Gentry v. Export Packaging Co., 238 F.3d 842, 850 (7th Cir. 2001) (quoting Faragher, 524 U.S. at 787).

To establish a hostile work environment claim, four requirements must be met. The plaintiff must show 1) that her work environment was objectively and subjectively offensive; 2) that the harassment was based on her membership in a protected class; 3) that the conduct was severe or pervasive; and 4) that there is a basis for employer liability. Cerros, 288 F.3d at 1045 (citing Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 754 [1998]).

"[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" Oncale, 523 U.S. at 81 (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 [1993]). Thus, a workplace is objectively offensive when a reasonable person would find it hostile or abusive, considering all of the circumstances. Ezell v. Potter, 400 F.3d 1041, 1047 (7th Cir. 2005).

"In evaluating the objective offensiveness of a plaintiff's work environment, we consider all of the circumstances, including frequency and severity of the conduct, whether it is humiliating or physically threatening, and whether it unreasonably interferes with an employee's work performance." Racicot v. Wal-Mart Stores, Inc., 414 F.3d 675, 677-78 (7th Cir. 2005); Luckie v. Ameritech Corp., 389 F.3d 708, 714 (7th Cir. 2004). In fact, the

_____

[4] For purposes of this motion the parties have agreed that the plaintiff found her workplace to be subjectively hostile. (Defendants' Brief in Support of Motion for Summary Judgment at 8; Plaintiff's Brief Opposing Defendants' Motion for Summary Judgment at 26).

threshold for the plaintiff is high, as "the workplace that is actionable is one that is 'hellish.'" Perry v. Harris Chernin, Inc., 126 F.3d 1010, 1013 (7th Cir. 1997); see also, Whittaker v. Northern Illinois University, __ F.3d __, 2005 WL 2291736 (7th Cir. 2005). "[I]solated . . . incidents will not support a hostile environment claim." Drake v. Minnesota Min. & Mfg. Co., 134 F.3d 878, 885 (7th Cir. 1998) (quoting McKenzie v. Illinois Dept. of Transp., 92 F.3d 473, 480 [7th Cir. 1996]).

Regarding employer liability, under Title VII, employers are vicariously liable for hostile environment harassment perpetrated by a supervisor. Faragher, 524 U.S. at 780 (1998); Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 765 (1998). The only important qualification is that if the plaintiff suffered no tangible employment action, "the employer is entitled to establish an affirmative defense consisting of two elements: '(a) that the employer exercised reasonable care to prevent and correct promptly . . . any harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective action provided by the employer or to avoid harm otherwise.'" Cerros, 288 F.3d at 951-52 (quoting Burlington Industries, Inc., 524 U.S. at 765 and Faragher, 524 U.S. at 780. In co-worker harassment cases, an employer satisfies its legal duty "if it takes reasonable steps to discover and rectify acts of . . . harassment of its employees. Cerros, 288 F.3d at 952 (quoting Parkins v. Civil Constuctors of Illinois, Inc., 163 F.3d 1027, 1032 [7th Cir. 1998]).

The plaintiff maintains that the DOC's workplace intrusion into her sexual privacy when it questioned her about an off-site sexual assault created a hostile, abusive work environment. The plaintiff maintains that the defendants' investigatory interviews unreasonably intruded upon her sexual privacy "by asking her to relive the egregious details of the sexual assault." (Plaintiff's Brief at 14).

The plaintiff also takes issue with the warden's decision to use two male on-site personnel as investigators despite the availability of four female psychologists. The plaintiff contends that the all male investigatory team took a "'blame the female victim' mentality" and conducted "the investigation in an insensitive manner and surprise fashion without regard to the vulnerability of sexual assault victims." Id. at 35. She contends that she suffered "psychological injury from re-living the assault as a result of the surprise investigation" and that she also suffered "institution-wide embarrassment and humiliation when the fact of her assault was exposed to the rest of the institution." Id. at 31.

The plaintiff further states that her work environment, "by virtue of becoming hostile, in turn became an alteration of the very conditions" of her employment. Id. According to the plaintiff, the defendants' failure to transfer defendant DeBeers to the third shift was part of the totality of the circumstances demonstrating the existence of a hostile work environment.

In moving for summary judgment, the defendants assert that the plaintiff cannot establish a prima facie claim of a hostile work environment that caused a change in the terms or conditions of her employment. The defendants maintain that the sexual encounter between defendant DeBeers and the plaintiff at her home on October 5, 2001, was a personal matter that had no relationship to her work and, therefore, did not create a sexually hostile work environment.

The defendants challenge the plaintiff's contention that the investigation into her sexual encounter with defendant DeBeers was intrusive, thereby creating a sexually hostile work environment. They assert that the plaintiff's claim that the investigation into the encounter should not have been conducted is wholly without merit. The defendants further assert that on October 15, 2001, when defendant Buchler learned about the sexual encounter, he did not

know if there was any connection between the private sexual encounter between the plaintiff and defendant DeBeers and defendant DeBeers' conduct at work.

They also maintain that there is no merit to the plaintiff's claim that assigning two male employees at the RYOCF to conduct the investigation, as opposed to using female external investigators, contributed to the hostile work environment. They challenge the plaintiff's claims that the nature of the questioning during the investigation and the failure to move defendant DeBeers to third shift created a hostile work environment for her.

In the instant case, the plaintiff's hostile work environment claims arise from four investigatory interviews that occurred following her voluntary disclosure to a DOC employee of the fact that she had been sexually assaulted off-site by another DOC employee. The circumstances that prompted these interviews provides a context for their review and is helpful to a resolution of the issues before the court.

The undisputed facts establish that the plaintiff had sexual contact with a co-worker, defendant DeBeers, on October 5, 2001, after he came to her home to assist her and her children following her medical treatment. The plaintiff, who was recovering from some medical procedures and the effects of the anesthesia, could not consent to the sexual contact, given her diminished capacity.

When the plaintiff returned to work on October 8, 2001, she told two co-workers, defendant Nelson and Ms. Vena, about the incident. A week later, defendant Nelson reported to defendant Wallace, the RYOCF security officer, what she knew about the situation between defendant DeBeers and the plaintiff because she believed defendant DeBeers was at risk for self-injury. Defendant Wallace reported what defendant Nelson had told her to the warden, defendant Buchler, who made the decision to initiate an investigation.

If a sexual assault had occurred, such conduct would be a violation of DOC Work Rule #11, whether it occurred on or off the premises. Because the plaintiff and defendant DeBeers worked in fairly close proximity, defendant Buchler wanted to know whether there was other workplace conduct that created a hostile work environment for the plaintiff. Defendant Buchler selected defendant Claus, a captain, and defendant Peterson, the RYOCF business director, to conduct the investigation.

The first interview, which was conducted by defendants Claus and Peterson at the request of defendant Buchler, took place on October 23, 2001. A union representative was present for the plaintiff. The undisputed facts demonstrate that the content of this interview was limited in its focus. The investigators addressed the assault at the plaintiff's home by defendant DeBeers and her mental state resulting from the incident. The plaintiff was also asked about the videotape and the money defendant DeBeers gave her. In addition, she was asked background information about her marital status, the length of time she was married, the number and ages of her children, as well as whether it was financially difficult to be a single parent. She was not asked any questions about her sexual orientation, medical history, mental history, or dating/social habits, other than as they pertained to defendant DeBeers.

Follow-up investigatory interviews of the plaintiff took place on November 13, November 15, and November 29, 2001, and were limited in focus to the assault, the exchange of money and the videotape. A predisciplinary meeting was the focus of the interview held on November 15, 2001. This interview was part of a disciplinary investigation because it was believed that the plaintiff had not given the investigators truthful information at the interview on October 23, 2001, about the videotape and the payment of $20,000 by defendant DeBeers to her. Defendants Claus and Peterson conducted this interview which

Officer Lamont Marshall, the plaintiff's union representative, also attended. The plaintiff was only asked a few questions, all of which related to the payment of the $20,000 and the videotape. The record demonstrates that the questions were not personal in nature and that the plaintiff refused to answer any of them.

Defendant DeBeers' sexual contact with the plaintiff which gave rise to the investigation was very serious, and understandably was an extremely upsetting event for the plaintiff. However, the sexual assault is not the focus of her hostile work environment claim. Rather, the plaintiff's claim focuses on the interviews which resulted from her reporting of the incident to co-workers.

Focusing on the interviews which form the basis of the plaintiff's Title VII claim, the court finds that the conduct of the interrogations do not rise to the level of objectively offensive behavior, the first element of a hostile work environment claim. The plaintiff was apparently surprised by the initial interview since she believed that her statement to Ms. Nelson had been made in confidence. The plaintiff may have considered that such events created an offense work environment. However, the objective severity of the harassment must be considered in light of all the circumstances and from the perspective of a reasonable person in the plaintiff's position. Oncale, 523 U.S. at 81.

In this case, the officers conducting the investigatory interviews were not verbally abusive or physically threatening. Although the door to the interview room locked automatically, the plaintiff was never prohibited from leaving the room. She was never told that she could not leave the room, nor did she ask to leave the room. The questions asked were focused and geared to obtain information pertinent to the alleged sexual assault. The fact that the plaintiff was unprepared for the initial interview about the assault and was

uncomfortable with the fact that her employer chose two on-site male investigators to conduct it does not make such actions objectively offensive.

Although the plaintiff contends that the sexual assault was a private matter involving her personal life, the investigation only ensued because she had disclosed the incident to Ms. Nelson. When confronted with the possibility of a violation of DOC regulations and anti-discrimination laws, defendant Buchler promptly initiated an investigation. Because the plaintiff and defendant DeBeers worked in relatively close proximity, if the alleged assault had occurred, the undisputed facts show that defendant Buchler wanted to determine whether any other conduct in the workplace created a hostile working environment for the plaintiff. Defendant Buchler had a responsibility to maintain a work environment free of sexual harassment and a duty to investigate allegations of such harassment. See 29 C.F.R. § 1604.11(d); Perry, 126 F.3d at 1013 (employers are only liable for an environment of sexual harassment created by supervisors or co-workers "when they have been negligent either in discovering or remedying the harassment.").

The follow-up interviews were not focused on the alleged sexual assault. Rather, the plaintiff was interviewed because the investigators believed that the plaintiff had not provided truthful information during the initial interview. According to the undisputed facts, in the first interview, the plaintiff denied receiving any money from defendant DeBeers and could not recall videotaping him about the alleged sexual assault. In the interim between the first and subsequent interviews, the plaintiff reported the alleged assault to the Racine County Sheriff's Department and turned over defendant DeBeers' videotaped "confession" and $20,000 in cash. Defendant Buchler was contacted by the Sheriff's Department about the RYOCF investigation.

Because providing untruthful, inaccurate and incomplete information when required is a violation of a DOC work rule, subsequent interviews with the plaintiff were conducted. The plaintiff had union representation at the interviews. There is no evidence that these interviews were conducted in an abusive, threatening manner. As a result of the subsequent interviews, the plaintiff was reprimanded for providing untruthful information during the investigation in violation of DOC Work Rule # 6.

In addition, the fact that the plaintiff was fearful that she was the subject of workplace conversations and unhappy that defendant DeBeers was not placed on another shift does not establish the type of conduct that meets the "objectively offensive" standard from the perspective of a reasonable person. Based on the undisputed facts, the court finds that, considering all the circumstances, a reasonable person would not find the defendants' conduct with respect to the interviews hostile or offensive. See Ezell, 400 F.3d at 1047. Accordingly, the court concludes that the plaintiff has not established the first element of a claim of a hostile work environment.

Even if the court were to conclude that the plaintiff had shown that her work environment was objectively offensive, she has not presented evidence to establish the second element of a hostile work environment claim. She has presented no evidence that would support a finding that she was harassed because she is a woman.

Further, the plaintiff has not shown that the conduct at issue here was severe or pervasive. See Cerros, 288 F.3d at 1045. Not every unpleasant workplace is a hostile environment. In order to be actionable, the harassment must be sufficiently severe or pervasive to alter the conditions of the victim's employment. Oncale, 523 U.S. at 78. "The workplace that is actionable is one that is 'hellish.'" Perry, 126 F.3d at 1013. For example, in Saxton v. American Tel. and Tel. Co., 10 F.3d 526 (7th Cir. 1993), the court found that the

misconduct was insufficiently severe or pervasive when it consisted of a supervisor placing his hand on the employee's leg above the knee, rubbing his hand along her upper thigh, forcibly kissing her, and lurching at her from behind bushes. Similarly, the court failed to find a hostile environment in <u>Weiss v. Coca-Cola Bottling Co. of Chicago</u>, 990 F.2d 333 (7th Cir. 1993), where the defendant asked the plaintiff for dates on repeated occasions, placed signs which read, "I love you," in her work area, and twice attempted to kiss her. The court held that such incidents were too isolated and insufficiently severe to create a hostile work environment.

In this case, neither the initial interrogation nor any subsequent conduct of the defendants rose to the level of severe or pervasive conduct that altered the conditions of the plaintiff's employment. Therefore, the court concludes that the plaintiff has failed to establish the necessary elements of a hostile work environment claim under Title VII. The defendants are entitled to summary judgment on the plaintiff's hostile environment sexual harassment claim.

State Law Claims

The court now turns its attention to the plaintiff's pendent state law claims of sexual and marital status discrimination, retaliation/excessive discipline, <u>prima facie</u> harassment, general negligence, false imprisonment, assault, battery, negligent infliction of mental distress, intentional infliction of mental distress, invasion of privacy; and breach of confidentiality and professional negligence.

<u>Count II - Sexual and Marital Status Discrimination</u>

With respect to this claim, the plaintiff asserts: "Defendants knew of the Plaintiff's status of divorcee, and questioned her about it, nevertheless. . .." (Plaintiff's First Amended Complaint [Complaint], ¶ 41). The plaintiff contends that the defendants do not conduct

investigations into the private lives of male DOC employees, including those that are divorced. The plaintiff alleges that the defendants' conduct was discriminatory under Wis. Stat. § 111.321 and § 111.322(1) because they "unreasonably and substantially interfered with the terms and conditions of Plaintiff's employment under § 111.36, *Stats.* by creating an intimidating, hostile and offensive work environment . . .." (Complaint ¶ 42).

The plaintiff fails to specify which defendants she claims engaged in sex and marital status discrimination. The court notes that the allegations pertaining to this claim are based on the investigation. The only defendants who took part in the investigation were defendants Buchler, Claus and Peterson. The DOC, as the employer, would also be included in this claim. The remaining defendants were not involved in the investigation. Therefore, the court will consider this claim only as to defendants Buchler, Claus, Peterson and the DOC.

Under the Wisconsin Fair Employment Act (WFEA), no employer may engage in any act of employment discrimination against any individual on the basis of, among other things, marital status or sex. Wis. Stat. § 111.321. (Employment discrimination as defined in Wis. Stat. § 111.322(1) includes: discriminating against "any individual in promotion, compensation or in terms, conditions or privileges of employment" because of the individual's status under § 111.321. Under Wis. Stat. § 111.322(1), a plaintiff must prove "that the employer's actions: 1) were targeted at or impacted upon a member or members of a protected class; and 2) were undertaken because of the employee's membership in a protected class and not some other reason." Racine Unified School Dist. v. Labor & Industry Review Com'n, 164 Wis.2d 567, 609, 476 N.W.2d 707 (Wis. App. 1991).

The plaintiff was interviewed by defendants Claus and Peterson at the direction of defendant Buchler. However, there are no facts before this court that would indicate that the plaintiff's female gender or marital status as a divorcee had anything to do with the plaintiff

- 23 -

being interviewed or disciplined. The facts demonstrate that the plaintiff was asked one question in the initial interview which addressed her marital status. Moreover, the undisputed relevant facts demonstrate that the plaintiff was disciplined for failing to be truthful with the investigators, not because of her sex or marital status.

The plaintiff's contention that the conditions of her employment were affected as a result of her status of being female and divorced are not supported by the evidentiary facts before this court. Therefore, the court concludes that the defendants are entitled to summary judgment on this claim.

Count III - Retaliation/Excessive Discipline

_____The plaintiff maintains that she was retaliated against in violation of Wis. Stat. § 111.322(2m). She asserts that the defendants "failed to give fair warning to the Plaintiff for the interrogation about the sexual assault." (Complaint ¶ 44). The plaintiff states that she "was a target of discipline because she settled for money damages with Defendant DeBeers for the assault." Id. She maintains that she was issued a written warning for violating Work Rule # 6 "when she opposed the discriminatory and abusive interrogation and that this reprimand was excessive and retaliatory given the fact that the defendants "did not have an adequate basis to conduct the investigation in the first place" and were investigating a criminal act that took place outside the institution without the authority of law enforcement. Id. ¶¶ 45-46. She also claims that the warning blemished her "untarnished work record" and eliminated possibilities for advancement to the position of Program Assistant II." Id. ¶¶ 47-48.

_____Although the plaintiff does not specify which defendants she is claiming retaliated against her and imposed the allegedly excessive discipline, this claim apparently is based on the investigation and the written reprimand which the plaintiff received for providing untruthful information during the investigation. Thus, the court concludes that this claim is against

defendants Buchler, Claus, Peterson, and the DOC, as these defendants were the only defendants who took part in the investigation and were involved in the written reprimand.

In order to establish a retaliation claim under WFEA, "an employee must show that he or she engaged in protected activity, was subject to adverse employment decisions, and that there was a causal connection between the two facts." Kannenberg v. Labor and Industry Review Com'n, 213 Wis.2d 373, 395, 571 N.W.2d 165, 176 (Wis. App. 1997). If the employee makes this showing, the employer may rebut the claim of retaliation by articulating a legitimate, nondiscriminatory reason for its action. Id. If the employer meets this burden, the employee may prevail by presenting evidence that the preferred reason was a pretext. Id.

The plaintiff describes the protected activity as follows: "[I]t is [the plaintiff's] withdrawal into her self-protective mode in not sharing the information about the settlement during the surprise investigation of her private life that was the self-help which should be protected." (Plaintiff's Brief at 43). The plaintiff contends that the defendants failed "to inform [her] that she was a target for possible discipline" and that then "boot-strapping her self-help under those adverse circumstances into a Work Rule 6 violation" amounted to retaliation. Id.

The undisputed relevant facts demonstrate that the purpose of the October 23, 2001, interview was to determine whether a DOC employee, defendant DeBeers, had violated DOC Work Rule # 11 and, if the sexual assault did occur, whether there was other workplace conduct that created a hostile work environment for the plaintiff. It is undisputed that the plaintiff provided false information during the interview process. She denied receiving any money from defendant DeBeers and did not recall videotaping his confession to the alleged sexual assault. The plaintiff has cited no support for her assertion that providing less than

truthful information during the course of a workplace investigation is "protected activity" within the meaning of the statute.

Furthermore, although the plaintiff maintains that she was disciplined for her protected conduct, her employer has offered a legitimate nondiscriminatory reason for its actions. The undisputed facts show that the plaintiff was disciplined for providing untruthful information during the investigation of her alleged sexual assault in violation of DOC Work Rule # 6. The plaintiff has offered no evidence to show that her employer's reason for such action was merely a pretext for discrimination. See Kannenberg, 213 Wis.2d at 395. Therefore, the plaintiff has failed to establish the necessary requirements of a retaliation claim under Wis. Stat. § 111.322(2m). Accordingly, the defendants' motion for summary judgment will be granted on this claim.

Count IV - Prima Facie Harassment

In her brief addressing her prima facie harassment claim, the plaintiff asserts that all of the circumstances surrounding the investigation, including defendant Buchler's ordering of the investigation, "his approval of the investigation by the duo of Peterson and Claus, and the rest of the players in this matter" combined to cause her emotional harm. (Plaintiff's Brief at 49). Although this assertion is made in her brief, the plaintiff did not name defendant Peterson in her complaint on this count.

Under the heading of prima facie harassment, in addition to Warden Buchler and defendant Claus, the plaintiff named defendants Wiedholz-Abbott, Hermansen, LaSota and Milliren. With respect to this claim, the plaintiff asserts in her complaint that defendant Claus escorted the plaintiff to the entrance of the facility and Dr. Wiedholz-Abbott told her that "she must legally go to the hospital, by ambulance against the plaintiff's will." (Complaint ¶ 50). She further alleges that defendant Wiedholz-Abbott advised the emergency room physician

that the plaintiff should be held "for observation" and tried to "stall" her release. Id. ¶¶ 52-53.

The plaintiff claims that defendant Buchler threatened that he would have the police waiting for her if she did not take a ride home from RYOCF from an RYOCF agent or employee. Id. ¶ 55. She further maintains that defendant Buchler refused to allow her to call her family and threatened to put her on third shift. Id. ¶¶ 56, 68. The plaintiff further asserts that defendant Hermansen "verbally abused" her by "screaming and yelling at her in front of the Human Resources assistant". Id. ¶ 57. She also states that he harassed her at an entrance and refused to provide her with the investigation records. Id. ¶¶ 63, 65.

As to defendant LaSota, the plaintiff contends that she refused to allow the plaintiff "to pass through a security door in the prison" after the plaintiff confronted her about prying into the plaintiff's private life. Id. ¶ 61. She further states that defendant LaSota and others spread vicious rumors about her. Id. ¶ 66. The plaintiff also states that defendant Milliren harassed her by addressing her in a stern voice and suggesting that "[i]f this doesn't go your way, you'd better look for another job." Id. ¶ 62. The plaintiff claims that the defendants conducted harassing interviews with her in November 2001, and issued a written reprimand because she opposed the defendants' investigation of her. Id. ¶¶ 58, 60.

The plaintiff makes no allegations of prima facie harassment against defendants Wallace, Nelson or DeBeers. Accordingly, the court will address the claim as it relates to the other named defendants.

The plaintiff refers to this claim as prima facie harassment, citing Radue v. Dill, 74 Wis.2d 239, 246 N.W.2d 507 (1976). What the plaintiff contends is prima facie harassment has been referred to by the court as civil conspiracy. Radue, 74 Wis.2d at 241. "Civil conspiracy has been defined as a combination of two or more persons by some concerted action to accomplish some unlawful purpose or to accomplish by unlawful means some

purpose not in itself unlawful." Id. An essential element of the cause of action is the malicious motive of the alleged conspirators. Maleki v. Fine-Lando Clinic Chartered, S.C., 162 Wis.2d 73, 88, 469 N.W.2d 629 (1991). "For conduct to be malicious under conspiracy law it must be conduct intended to cause harm for harm's sake." Id. at 86.

The undisputed relevant facts do not support a finding that the named defendants conspired for an unlawful purpose or to cause her emotional harm. There is no evidence that the defendants acted in concert to harass the plaintiff. Rather, the plaintiff cites alleged individual actions by the named defendants which she claims constituted harassment. Many of these assertions are conclusory statements which were not presented in the proposed findings of fact. The court, in ruling on a summary judgment motion, must rely on the factual evidence before it. In addition, the record is devoid of evidence that the named defendants had a malicious intent to injure the plaintiff for the sake of injury or that they acted in concert to do so. Thus, the plaintiff has not established the requisite elements of a claim of prima facie harassment or civil conspiracy. Summary judgment for the defendants will be granted on this claim.

Count V - Negligence / Count IX - Negligent Infliction of Mental Distress

The plaintiff alleges that the defendants owed her a duty of "reasonable care in their conduct to her and contacts with and about her." (Complaint ¶ 71). She then states the elements of a negligence claim. In her brief, the plaintiff asserts that the defendants owed her "a duty of at least ordinary care, finding her in the position of an alleged victim of sexual assault." (Plaintiff's Brief at 44). She states that her experts support the fact that she suffered severe emotional distress. Because she does not specify which particular defendants allegedly engaged in such conduct, the court will address this claim with respect to all

defendants.  The plaintiff further maintains in her brief that defendant DeBeers was negligent in his care and treatment of her after she returned home from the hospital.

In Count IX, the plaintiff also asserts a claim of negligent infliction of mental stress against defendant DeBeers based on his nonconsensual sexual contact with her.  She maintains that defendant DeBeers, as a "trusted friend," owed her a "duty to refrain from conduct that would place the plaintiff at risk of harm from suffering mental distress." (Complaint ¶ 84).  The plaintiff addresses the negligence and the negligent infliction of mental distress claims together in her brief in opposition to the defendants' motion.  The court will do the same.

The court first will address the claim of negligent infliction of mental distress alleged against defendant DeBeers.  In order to establish a claim for the negligent infliction of emotional distress, the plaintiff must prove the elements of a traditional tort claim.  Bowen v. Lumbermens Mut. Cas. Co., 183 Wis.2d 627, 652, 517 N.W.2d 432, 442 (1994).  The plaintiff must establish that: 1) the defendant's conduct fell below the ordinary standard of care; 2) the plaintiff suffered from severe emotional distress; and 3) that the defendant's conduct was the cause of the emotional distress.  Id.  The plaintiff need not prove a physical manifestation of severe emotional distress.  Id. at 653.  Even if the plaintiff establishes the necessary elements, the court may determine that the defendant should not be liable based on public policy grounds.  Id.

In their brief in support of summary judgment, the defendants only address the claim of intentional infliction of emotional distress, not the alleged negligent infliction of mental distress claim.  Under the circumstances, the court lacks a sufficient basis to conclude that defendant DeBeers is entitled to summary judgment on the plaintiff's claim of negligent

infliction of mental distress. Accordingly, the defendants motion for summary judgment on this claim will be denied.

With respect to the plaintiff's negligence claim, the plaintiff must show that there exists: 1) a duty of care on the part of the defendant; 2) a breach of that duty; 3) a causal connection between the conduct and the injury; and 4) an actual loss or damage as a result of the injury. Antwaun A. ex rel. Muwonge v. Heritage Mut. Ins. Co., 228 Wis.2d 44, 56, 596 N.W.2d 456 (1999); Rockweit by Donahue v. Senecal, 197 Wis.2d 409, 418, 514 N.W.2d 742, 747 (1995).

In the State of Wisconsin, "all persons have a duty of reasonable care to refrain from those acts that unreasonably threaten the safety of others." Antwaun, 228 Wis.2d at 55. As the court explained: "This duty arises when it can be said that it was foreseeable that [an individual's] act or omission to act may cause harm to someone. Thus, the existence of a duty hinges on foreseeability." Id. at 55-56 (internal citations omitted).

The particular conduct of a defendant is not examined in terms of whether or not there is a duty to do a particular act, "but rather whether the conduct satisfied the duty placed upon individuals to exercise that degree of care as would be exercised by a reasonable person under the circumstances. Gritzner v. Michael R., 235 Wis.2d 781, 793-94, 611 N.W.2d 906 (2000); McNeese by Eisenberg v. Pier, 174 Wis.2d 624, 631, 494 N.W.2d 124 (1993). "The test is whether the defendant acted or failed 'to act under circumstances in which a person of ordinary intelligence and prudence would reasonably have foreseen that such an act or omission would subject [another person] to an unreasonable risk of injury.'" Kramschuster v. Shawn E., 211 Wis.2d 699, 705, 565 N.W.2d 581 (Wis. App. 1997) (quoting McNeese. 174 Wis.2d at 631). The existence of a duty and the scope of that duty are questions of law which the court may decide on a motion for summary judgment. Rausch v. Buisse, 33 Wis.2d 154,

164, 146 N.W.2d 801 (1966); Ceplina v. South Milwaukee School Bd., 73 Wis.2d 338, 341-42, 243 N.W.2d 183 (1976); Antwuan, 228 Wis.2d at 55-56.

In the instant case, with respect to defendants Buchler, Claus, Peterson and the DOC, the undisputed relevant facts show that the sexual assault at issue became known to the plaintiff's employer as a result of the plaintiff's disclosure of the assault to Ms. Nelson. When advised of the alleged assault, the Warden Buchler initiated an investigation as part of the responsibility to maintain a work environment free of harassment, including sexual harassment. This decision was based on the warden's concern that the conduct involved an employee who was a correctional officer supervising criminals and that this officer may have committed a crime of his own. Knowing that the plaintiff and defendant DeBeers worked in close proximity, defendant Buchler also was concerned about whether the alleged sexual assault had impacted the workplace and created a hostile work environment for the plaintiff. The plaintiff has presented no evidence that such conduct in initiating an investigation into allegations of sexual assault constituted negligence on the part of these defendants.

The plaintiff's contention that defendant Buchler and the DOC were negligent in selecting two male investigators to conduct the interviews about the sexual assault also lacks support in the record. The plaintiff's objection to these investigators is based solely on their gender. There is no evidence that defendants Claus and Peterson were not competent or able to appropriately conduct the investigation. The plaintiff presents no evidence or supporting legal authority to support her position that the defendants had a duty to select female investigators in this case.

With respect to defendants Nelson and Wiedholz-Abbott, the plaintiff has not shown that they owed a duty of care to her. Neither defendant had a therapist-patient relationship with the plaintiff. They were employed by the DOC and worked with inmates, not RYOCF

- 31 -

staff. Even if the plaintiff had asked defendant Nelson to keep her disclosure of defendant DeBeers' actions confidential, the plaintiff has presented no evidence to support her contention that defendant Nelson had a legal duty to maintain such confidence.

Defendant Wiedholz-Abbott allegedly told the plaintiff that she should go to the hospital when she experienced an episode at work. There is no evidence to suggest that it was foreseeable that such statement might cause harm to the plaintiff. Thus, the evidence does not support the plaintiff's contention that defendant Wiedholz-Abbot actions constituted negligence in this case.

The plaintiff does not specifically address the allegedly negligent conduct of defendants Hermansen, LaSota, Milliren and Wallace. To the extent that the plaintiff is challenging their statements made to her or to the investigators, she has not presented sufficient facts to establish the existence of a duty to her. As noted, the existence of a duty of care "hinges on foreseeability." Antwuan, 228 Wis. 2d at 56. The evidence fails to show that it was foreseeable that the actions and statements of these defendants might cause harm to the plaintiff. The court reaches a similar conclusion with respect to defendant Wallace's reporting of the sexual contact to defendant Buchler. Therefore, the court concludes that the defendants' negligence claim against defendants' Hermansen, LaSota, Wallace and Milliren will be granted.

The defendant does not address the claim of negligence as it relates to defendant Debeers. The court finds that the undisputed relevant facts do not support a grant of summary judgment on the negligence claim as to defendant DeBeers. Thus, the defendants motion for summary judgment as to defendant DeBeers on this claim is denied.

In sum, for the foregoing reasons, the court concludes that the defendants' motion for summary judgment on the plaintiff's negligence claim will be granted with respect to all

defendants, with the exception of defendant DeBeers. As to defendant DeBeers, the motion will be denied.

Count VI - False Imprisonment

_____The plaintiff asserts that she was falsely imprisoned by the defendants when they conducted "the abusive, 2 hour interrogation in the closed room against her will." (Complaint ¶ 78). In her brief opposing the defendants' motion, the plaintiff asserts that a jury could make a reasonable inference that she was under threat of force and authority by this surprise investigation and her belief that she was not free to leave the room.

This claim is asserted against the defendants collectively and does not specify which defendants falsely imprisoned the plaintiff. Based upon the undisputed facts, this claim apparently is asserted against defendants Claus and Peterson, who were the only defendants who took part in the investigatory interviews.

The plaintiff further alleges a false imprisonment claim against defendant DeBeers, contending that he "did restrain [her] and cause her to apprehend restraint and confinement, and she had an awareness of her confinement and restraint." (Complaint ¶ 77). Although not presented in her proposed findings of fact, the plaintiff states in her brief, citing her affidavit, that her "legs were pinned by defendant DeBeers at one point during the underlying assault," which she asserts constituted false imprisonment. (Plaintiff's Brief at 45).

"The essence of false imprisonment is the intentional, unlawful, and unconsented restraint by one person of the physical liberty of another". Herbst v. Wuennenberg, 83 Wis.2d 768, 774, 266 N.W.2d 391, 394 (1978), (citing Dupler v. Seubert, 69 Wis.2d 373, 381, 230 N.W.2d 626 [1975]). "An actor is subject to liability to another for false imprisonment if (a) he acts intending to confine the other or a third person within boundaries fixed by the actor, and (b) his act directly or indirectly results in such a confinement of the other, and

(c) the other is conscious of the confinement or is harmed by it." <u>Herbst</u>, 83 Wis.2d at 774-75

(adopting the definition of false imprisonment in the <u>Restatement of Torts</u>, <u>2d</u>, § 35).

The court in <u>Herbst</u> explained: "It is not a sufficient basis for an action for false imprisonment that the 'prisoner' remained within the limits set by the actor. Remaining within such limits is not a submission to the threat of force unless the 'prisoner' believed that the actor had the ability to carry his threat into effect." 83 Wis.2d at 776-77 (quoting <u>Restatement of Torts</u>, <u>2d</u>, § 40, Comments). In other words, submission must be in response to an apprehension of force. A voluntary submission to a request does not constitute an imprisonment. <u>Id.</u>

Regarding the initial investigative interview, the undisputed relevant facts establish that the plaintiff was surprised by and unprepared for the interview with defendants Claus and Peterson. However, there is no evidence to support the contention that she was under threat of force to remain in the room. The relevant facts show that the plaintiff was in the closed room with her union representative and the two investigators and answered the questions posed to her. She was aware that the door to the room locked automatically. The plaintiff was never told that she could not leave the room, nor did she ask to leave at any time. There is no evidence to show that the plaintiff was restrained from leaving or that the defendants threatened to use force to restrain her. Accordingly, the plaintiff has failed to establish a viable claim of false imprisonment against the defendants involved in the investigatory interviews.

The plaintiff also asserts that defendant DeBeers falsely imprisoned her in her home when he had sexual contact with her. The plaintiff argues in her brief that defendant DeBeers pinned her legs at one point during the sexual assault, but this claimed fact is not included in the plaintiff's proposed findings of fact. As explained in <u>Uhl v. Zalk Josephs Fabricators, Inc.</u>,

121 F.3d 1133, 1135 (7th Cir. 1997), the nonmovant bears the burden of identifying specific evidence so the movant can respond and the court can determine whether a material issue of fact exists. The court is not required to scour the record looking for factual disputes, nor is the court obligated to sift through the transcripts or affidavits filed by the parties to find testimony to back up their respective positions. Id. (citing Flaherty v. Gas Research Institute, 31 F.3d 451, 453 (7th Cir. 1994). Thus, the plaintiff has not presented facts to establish a viable false imprisonment claim against defendant DeBeers.

Even if the court were to consider the fact that defendant DeBeers pinned the plaintiff's legs at one point during the assault, the evidence is not sufficient to support the conclusion that defendant DeBeers' action "directly or indirectly" resulted in a confinement of the plaintiff, an essential element of the cause of action for false imprisonment. Herbst, 83 Wis.2d at 774-75. The defendants are entitled to summary judgment on the plaintiff's false imprisonment claim.

Count VII - Assault

The plaintiff contends that the defendant DeBeers committed assault against her by placing her in apprehension of unwanted sexual contact. This claim is brought only as to defendant DeBeers.

The defendant argues that "[w]hen an assault is carried out to completion, a battery is committed. Since the plaintiff's claim is based on the completion of the alleged sexual conduct, she should not have a claim of assault." (Defendants' Brief in Support of Summary Judgment, [Defendants' Brief] at 30).

"An assault is an unlawful attempt, coupled with apparent present ability, either to do physical harm to another or to put another in fear that physical harm will be done to that person." Wis JI-Civil, 2004. The following elements establish an assault: 1) that the

defendant made menacing physical movements at and toward the plaintiff which were performed close enough to the plaintiff to justify a reasonable fear of physical harm; 2) that under all the circumstances, the plaintiff had reasonable cause to believe, and did believe, that the defendant had a present ability to cause physical harm to her and did intend to cause physical harm; and 3) that at the time the defendant either had an intent to cause physical harm or intent to put the plaintiff in fear that physical harm was to be committed upon her. Id.

Based upon the state of the record, the court finds that the plaintiff's assault claim against defendant DeBeers cannot be resolved on summary judgment at this juncture. Therefore, the defendant's motion for summary judgment on this claim is denied.

<u>Count VIII - Battery</u>

The plaintiff also asserts that defendant DeBeers committed a battery against her in making actual, unwanted sexual contact with her person. In opposing this claim, the defendants state that nothing in the record suggests a battery by defendant DeBeers. The defendants also reference the state criminal battery statute and state that "no charges were filed by the District Attorney against Debeers." (Defendants' Brief at 30).

In order to prove a battery, the plaintiff must prove to a reasonable certainty by evidence that is clear, satisfactory, and convincing that the defendant intentionally caused bodily harm to the plaintiff and that the plaintiff did not consent to the harm. Wis JI-Civil, 2005.

The undisputed facts show that defendant DeBeers had sexual contact with the plaintiff. They also establish that the plaintiff could not consent to this sexual contact because of her diminished capacity due to the anesthesia she had been given. Given the record before this court, the plaintiff's battery claim against defendant DeBeers is not subject to

resolution on summary judgment. Accordingly, defendants' motion for summary judgment on this claim is denied.

Count X - Intentional Infliction of Emotional Distress

The plaintiff contends that the conduct of the defendants was "extremely outrageous, and was with intent or reckless disregard for the interests of the Plaintiff." (Complaint ¶ 89). The plaintiff maintains that the defendants' conduct was the proximate cause of her mental and emotional distress. Although the complaint refers to the defendants collectively on this count, the plaintiff only has presented argument in her brief pertaining to defendant Pam Nelson. Therefore, the court will consider this claim only as it relates to defendant Nelson.

In order to maintain a claim of intentional infliction of emotional distress, a plaintiff must establish four elements: 1) that the conduct was intended to cause emotional distress; 2) that the conduct was extreme and outrageous; 3) that the conduct was the cause of the plaintiff's emotional distress; and 4) that the emotional distress was extreme and disabling. Pierce v. Physicians Ins. Co. of Wisconsin, Inc., 278 Wis.2d 82, 692 N.W.2d 558, 568-69 (2005) (J. Prosser concurring); see also, Anderson v. Continental Ins. Co., 85 Wis.2d 675, 694, 271 N.W.2d 368, 378 (1978).

In support of this claim, the plaintiff states that defendant Nelson worked with sexual offenders and taught a class about victims' responses to sexual assault. On this basis, the plaintiff asserts that defendant Nelson's "knowledge that harm to [the plaintiff] was certain to occur with her disclosure [of the sexual assault] can be inferred on this record." (Plaintiff's Brief at 45).

Defendant Nelson was a social worker who worked with sexual offenders. The facts establish that defendant Nelson conducted a sexual offender treatment class designed to provide sensitivity training to inmates at the correctional facility about victims' responses to

sexual assaults. Although the plaintiff considered Ms. Nelson to be her friend, Ms. Nelson was not the plaintiff's treating social worker or counselor. There is no evidence in the record that defendant Nelson provided treatment to the plaintiff or any RYOCF staff. The undisputed relevant facts demonstrate that defendant Nelson did not have a professional relationship with the plaintiff and was merely a co-worker in whom the plaintiff chose to confide.

The plaintiff has presented no evidence to show that defendant Nelson shared the information that the plaintiff disclosed to her with the intention of causing the plaintiff emotional harm. Rather, the record demonstrates that defendant Nelson decided to report the incident because she believed defendant DeBeers was at risk for self-injury. The facts do not establish that defendant Nelson's conduct in reporting the sexual assault was "extreme and outrageous." See Pierce, 278 Wis.2d at 104. Accordingly, the plaintiff has not established that defendant Nelson intended to cause the plaintiff emotional distress. Therefore, the defendants are entitled to summary judgment on this claim.

Count XI - Invasion of Privacy

With regard to her invasion of privacy claim, the plaintiff asserts that "[i]nterrogating the Plaintiff about the sexual assault and disclosing the information as well as misinformation about it constituted a public disclosure of private facts." (Complaint ¶ 91). The plaintiff maintains that the investigation was a "severe intrusion into [her] private life." Id. at ¶ 92.

It appears that the plaintiff's claim is brought against the defendants who were involved in the initial interrogation – defendants Buchler, Claus and Peterson. However, in her brief, the plaintiff only argues this claim with respect to defendant LaSota. Specifically, the plaintiff contends that "[d]efendant LaSota obtained information from a co-employee Christensen, and went on to tell investigators that 'probably everybody' else (of staff) knew about the allegations of rape as well as blackmail." (Plaintiff's Brief at 42-43). In making this assertion, the plaintiff

cites the affidavit of defendant Peterson. The plaintiff asserts that "there have been enough publications to make this claim viable." Id. at 43.

In order to sustain an action for invasion of privacy under Wis. Stat. § 895.50, the plaintiff must prove: 1) there has been a "public disclosure" of facts regarding the plaintiff; 2) the facts disclosed were private; 3) the private matter is one that would be highly offensive to a reasonable person of ordinary sensibilities; and 4) the defendant acted either unreasonably or recklessly as to whether there was a legitimate public interest in the matter, or with actual knowledge that none existed. Olson v. Red Cedar Clinic, 273 Wis.2d 728, 732, 681 N.W.2d 306, 309 (2004). For a disclosure to be "public" means that "the matter is made public by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." Id. at 733 (quoting Zinda v. Louisiana Pacific Corp., 149 Wis.2d 913, 929, 440 N.W.2d 548 [1989]). Public disclosure also may be found "where 'a special relationship exists between the plaintiff and the 'public' to whom the information has been disclosed.'" Olson, 273 Wis.2d at 733 (quoting Hillman v. Columbia County, 164 Wis.2d 376, 395, 474 N.W.2d 913 [Wis. App. 1991] [citations omitted]).

Defendants Claus and Peterson, at the request of defendant Buchler, conducted an investigation into possible workplace misconduct and the alleged sexual assault of the plaintiff by defendant DeBeers. As the warden, defendant Buchler was responsible for maintaining a workplace free of sexual harassment. The officers conducted their investigation and reported their findings to defendant Buchler. There is no evidence that the information was communicated to anyone other than DOC personnel as part of the investigation. Thus, there was no "public" disclosure of the facts regarding the plaintiff and defendant DeBeers. Furthermore, the investigation was instigated in the first place because the plaintiff reported

the sexual contact to a co-worker. Based on the undisputed facts, the plaintiff has failed to establish an invasion of privacy claim against defendants Buchler, Claus and Peterson.

The plaintiff also asserts an invasion of privacy claim against defendant LaSota. She states that defendant LaSota obtained information from another employee and then told the investigators during the investigation that "probably everyone" knew about the plaintiff's allegations. Apparently, defendant LaSota was conveying her opinion as to the staff's knowledge of the plaintiff's allegations. She was doing so during the course of an investigation into a possible hostile work environment for the plaintiff.

The plaintiff has presented no evidence that the hearsay information was communicated to the public at large or to so many people that it was certain to become one of public knowledge. See Olson, 273 Wis.2d at 732. The plaintiff has made an insufficient showing to establish the existence of each element essential to her claim of her invasion of privacy claim. The defendants' motion for summary judgment will be granted on this claim.

Count XII - Breach of Confidentiality and Professional Negligence

The plaintiff asserts her claim of breach of confidentiality and professional negligence is only against defendant Nelson. She alleges that defendant Nelson owed the plaintiff confidentiality "either expressedly or based upon an implied promise as a social worker" and breached that promise resulting in damages to the plaintiff. (Complaint ¶ 95). She also maintains that defendant Nelson "owed a duty to Plaintiff to render any services to Plaintiff in a professional manner, meeting a professional standard of care." Id.

Although defendant Wiedholz-Abbott was not mentioned in the plaintiff's complaint, the plaintiff contends in her brief that she is also asserting this claim against defendant Wiedholz-Abbott, a prison psychologist. The plaintiff alleges that defendants Nelson and Wiedholz-Abbott violated their duties of confidentiality and professionalism. The plaintiff asserts that

she "told Nelson to keep the assault and matter with DeBeers confidential," but that defendant Nelson defied the "request of confidentiality, and need for sensitive care at the time of her acute suffering from the assault." (Plaintiff's Brief at 50). According to the plaintiff, defendant Wiedholz-Abbott incorrectly advised the plaintiff that "she legally had to go to the hospital" and that this was "done with the threat of law at a correctional facility with the RYOCF officials standing behind" this assertion. Id.

In response, the defendants state that both defendants had duties that included the treatment of offenders, but not the RYOCF staff. Because there was no professional relationship between the two defendants and the plaintiff, the defendants assert that this claim must be summarily dismissed.

A patient must be "treated" for the psychologist-patient privilege to apply. Wis. Stat. § 905.04; see also, State ex rel. Pflaum v. State of Wis. Psychology Examining Bd., 111 Wis.2d 643, 645, 331 N.W.2d 614 (Wis. App. 1983). Section 905.04(2) of the Wisconsin statutes confers on a patient an evidentiary privilege:

> to refuse to disclose and to prevent any other person from disclosing confidential communications made or information obtained or disseminated for purposes of diagnosis or treatment of the patient's physical, mental or emotional condition, among the patient, . . . or persons, including members of the patient's family, who are participating in the diagnosis or treatment under the direction of the physician, . . . psychologist, [or] social worker . . ..

Thus, as relevant to this case, a plaintiff must show that she was a patient and that the information was exchanged between herself and the social worker or psychologist for the purposes of diagnosis or treatment. See State ex rel. Pflaum, 111 Wis.2d at 645.

Here, the undisputed relevant facts do not establish that the plaintiff was a patient of either defendant Nelson or defendant Wiedholz-Abbott, nor do those facts support a finding

that the plaintiff was being diagnosed or treated by either defendant. Accordingly, the plaintiff has failed to establish the requisite elements of her claim of breach of confidentiality and professional negligence against defendants Nelson and Wiedholz-Abbott. The defendants motion for summary judgment will be granted on this claim.

In sum, for the reasons stated herein, the defendants' motion for summary judgment will be granted in part and denied in part. The defendants' motion will be granted on all claims against all defendants, with the exception of the plaintiff's claims against defendant DeBeers for negligence (Count V), assault (Count VII), battery (Count VIII) and negligent infliction of mental distress (Count IX). The defendants' motion will be denied as to these claims.

## <u>CONCLUSION</u>

**NOW, THEREFORE, IT IS ORDERED** that the defendants' motion for summary judgment (Docket #72) be and hereby is **granted** in part and **denied** in part as stated herein. The motion is **granted** with respect to the defendants on all claims, with the exception of the following claims asserted against defendant DeBeers. The motion is **denied** as to defendant DeBeers on the plaintiff's claims of negligence (Count V), assault (Count VII), battery (Count VIII) and negligent infliction of mental distress (Count IX).

Dated at Milwaukee, Wisconsin, this 30th day of September, 2005.

BY THE COURT:


     s/Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge