# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JANET L. SMITH,

    Plaintiff,

    v.                                                      Case No. 03-C-0103

DALE DEBEERS,

    Defendant.

## DECISION AND ORDER

    Plaintiff Janet L. Smith filed this action on February 4, 2003, against the State of Wisconsin and several individual defendants, alleging that she was subjected to a hostile work environment sexual harassment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. The plaintiff also alleged several state law claims. On September 30, 2006, the court entered an order dismissing all claims, with the exception of the following claims asserted against defendant Dale DeBeers: negligence (Count V); assault (Count VII); battery (Count VIII); and negligent infliction of mental distress (Count IX).

    On May 1, 2006, defendant DeBeers filed a motion in limine seeking to exclude the testimony of the plaintiff's purported experts – Thomas M. Wiggins, M.D., Ze've Bar-Av, Ph.D., Linda E. Ledray, Ph.D., and Lisa M. Simonds, M.D. – based on Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) and Federal Rules of Evidence 402, 403, and 703. The defendant asserts that any testimony by the experts as to the defendant's knowledge on the evening of October 5, 2001, or his character and credibility is unreliable, irrelevant, highly prejudicial and not helpful to the jury. The defendant also seeks to prohibit

the plaintiff from testifying that she was "raped" or "sexually assaulted" because such "testimony constitutes impermissible lay witness testimony pursuant to Fed. R. Evid. 701." (Defendant's Motions in Limine at 2). Finally, the defendant states that the testimony of Dr. Bar-Av should be excluded in view of the indefinite suspension of his psychologist's license and because, pursuant to Wis. Stat. § 455.02(1m), a person may not practice psychology without a license. In the alternative, the defendant requests that he be allowed to cross examine Dr. Bar-Av on his license suspension.

The plaintiff asserts that the experts' testimony is admissible. Specifically, the plaintiff states that Dr. Wiggins will testify regarding the plaintiff's dosage level of general anesthesia prior to her assault, the type of drugs used, the likely condition of the plaintiff within the time frame of October 5, 2001, and her capacity to consent to sex. According to the plaintiff, the issues of the plaintiff's level of intoxication based upon her medical records, the likely effect of that intoxication and what it would do to her mental functioning are all clearly within Dr. Wiggins's expertise in having anesthetized or sedated over 25,000 patients.

With respect to Dr. Bar-Av, the plaintiff states that he will testify regarding the opinions contained in his preliminary report, including his opinion as to the plaintiff's emotional injury. He will also provide a "simple damage assessment with respect to how much counseling and psychological care are needed and how much it will cost given a particular emotional injury." (Plaintiff's Response and Brief Opposing Defendant's Motion in Limine at 5). The plaintiff asserts that the fact that Dr. Bar-Av is not licensed to practice does not render him incapable of offering an opinion about the plaintiff's emotional injury.

As to Dr. Ledrey, the plaintiff states that she will testify about her opinions contained in her preliminary report, including the plaintiff's Post Traumatic Stress Disorder as a result

of the sexual assault, typical victims' responses to being sexually assaulted and victims' delayed reporting. Finally, with respect to Dr. Simonds, the plaintiff states that she will be testifying as a treating physician and will not be providing expert testimony. In particular, Dr. Simonds will testify about her observations of the condition of the plaintiff, her diagnosis and her treatment.

In his reply brief, the defendant points out that the plaintiff has modified her position on the nature of certain expert testimony. He asserts that before he filed his motion in limine, the plaintiff's experts all had opined that the plaintiff could not or did not consent to sexual relations on October 5, 2001, and that three of the purported experts, Drs. Bar-Av, Ledray and Simonds, concluded that the plaintiff had been sexually assaulted/raped.

The question before the court is whether the testimony of the purported expert witnesses meet the requirements of Fed. R. Civ. P. 702, which governs the admissibly of expert opinion evidence in federal court. Rule 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In <u>Daubert v. Merrell Dow Pharmaceuticals</u>, 509 U. S. 579 (1993), the Supreme Court held that opinion evidence of reputable scientists is admissible in evidence in a federal trial even if the particular methods utilized by the expert in reaching his or her opinion are not yet accepted as canonical in their branch of the scientific community. The Court also placed a "gatekeeping" responsibility on the trial court to ensure that scientists who testify in court they adhere to the same rigorous intellectual standards that are required in their professional work.

-3-

The trial court's basic "gatekeeping" obligation applies not only to testimony based on "scientific" knowledge, but also to testimony based on "technical" and "other specialized" knowledge." Kumho Tire Co. Ltd. v. Carmichael, 526 U.S. 137, 141 (1999).

To fulfill its "gatekeeping" function under Fed. R. Evid. 702, a court is to employ a two-step analysis. First, the court must determine "whether the expert's testimony reflects scientific knowledge; that is, the court must make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid." Chapman v. Maytag Corp., 297 F.3d 682, 686-87 (7th Cir. 2002) (quoting Daubert, 509 U.S. at 592-93). This task requires that the court consider whether the testimony has been subjected to the scientific method; it must rule out 'subjective belief or unsupported speculation.'" Chapman, 297 F.3d at 687 (quoting Porter v. Whitehall Laboratories, Inc., 9 F.3d 607, 614 [7th Cir. 1993]); Deimer v. Cincinnati Sub-Zero Products, Inc., 58 F.3d 341, 344 (7th Cir. 1995). Second, the court has to determine "whether the evidence or testimony assists the trier of fact in understanding the evidence or in determining a fact in issue – the suggested scientific testimony must 'fit' the issue to which the expert is testifying." Deimer, 58 F.3d at 344 (quoting Porter, 9 F.3d at 616); Chapman, 297 F.3d at 687.

In Daubert, the Court set forth a nonexhaustive list of four factors that are helpful in gauging the reliability of expert testimony: 1) "whether [the expert's theory] can be (and has been) tested"; 2) "whether the theory or technique has been subjected to peer review and publication"; 3) "the known or potential rate of error"; and 4) "general acceptance" among the relevant scientific community. Daubert, 509 U.S. at 593-94. However, the trial court's inquiry should be a "flexible" one; no single factor is either required in the analysis or dispositive as to its outcome. See Kumho, 526 U.S. at 141. ("[T]he test of reliability is 'flexible' and

-4-

Daubert's list of specific factors neither necessarily nor exclusively applies to all experts or in every case").

"The purpose of the *Daubert* standard is to ensure that any admitted scientific evidence is reliable; that is, well-grounded in methods and procedures of science." Chapman, 297 F.3d at 687. Moreover, "the focus of the district court's *Daubert* inquiry must be solely on principles and methodology, not on the conclusions they generate." Id. A court may exclude expert testimony when there is "simply too great an analytical gap between the data and the opinion proffered." General Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997).

The Daubert framework is applicable to social science experts, as well as to experts in the hard sciences. Tyus v. Urban Search Management, 102 F.3d 256, 163 (7th Cir. 1996); see also, United States v. Hall, 93 F.3d 1337 (7th Cir. 1996) (requiring application of the Daubert standard to testimony of a social scientist tendered as an expert witness); United States v. Lamarre, 248 F.3d 642, 647-48 (7th Cir. 2001).

In this case, Dr. Wiggins, an anesthesiologist and Fellow with the American College of Anesthesiologists, reviewed the plaintiff's anesthetic record pertaining to the procedures performed upon her on October 5, 2001, as the basis for his opinion. There is no indication that he interviewed the plaintiff or reviewed her medical records.

Dr. Wiggins noted that the plaintiff received a general anesthetic and was in the recovery room for two hours, which he opined was long for even a general anesthetic in an outpatient. Dr. Wiggins stated in his report that a person is not considered to be recovered from the effects of a general anesthetic for at least 24 hours and in the plaintiff's case, "the effects probably lasted several days." (Affidavit of Michael T. Piontek [Piontek Affidavit], Exh. A, Report of Thomas M. Wiggins, M.D., dated September 13, 2003 [Wiggins Report] at 1).

-5-

He further opined that during the remaining hours of October 5, 2001, the plaintiff "could not have made rational decisions in her own best interest." Id. Dr. Wiggins also states:

> [The plaintiff's] behavior could have been easily influenced to the point of doing things she would not have done if not sedated. She could not have made a decision about whether to have sexual relations based on her own emotions, because she would not have known what they were. [The plaintiff], although at times perhaps conscious on the evening of 10/05/01, would have no memory of 10/05/01 on the following day 10/06/01. Her perception of reality would have been greatly impaired.

Id. at 1-2.

Dr. Wiggins has considerable experience in anesthesiology as evidenced by his curriculum vitae. He is certainly competent to testify about the anesthetics the plaintiffs was administered prior to her medical procedures and the impact of those anesthetics based on his review of the record. However, Dr. Wiggins provides no scientific analysis or data to support his conclusion that the plaintiff was incapable of deciding whether to have sexual relations on October 5, 2001. He states that the plaintiff was slow to recover from the effects of the anesthetic, but provides no scientific data or information of the factors that impact recovery rates. Dr. Wiggins opines that the general anesthetic "probably lasted several days" and that the plaintiff "could have been easily influenced" because of the effects of the anesthetic. Dr. Wiggins' opinion as to the plaintiff's abilities is based on unsupported speculation as clearly indicated by the terminology he uses. Such opinion does meet the requirements for admissibility under Daubert and Rule 702.

He further states that although she was "at times perhaps conscious on October 5, 2001," she would have no memory of that day on the following day. Id. at 1. He provides nothing but his bare conclusion, unsupported by any scientific data or analysis, that the plaintiff could not have consented to the sexual encounter. Given the lack of scientific

-6-

methodology, Dr. Wiggins' conclusion as to the plaintiff's ability to consent is based on unsupported speculation which does not meet the Daubert requirements for admissibility. "[A]n opinion has significance proportioned to the sources that sustain it.' An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." Huey v. United Parcel Service, Inc., 165 F.3d 1084, 1087 (7th Cir. 1999) (citations omitted).

Dr. Bar-Av bases his opinion on a clinical interview lasting about 8.5 hours, the results of the Wechsler Adult Intelligence Scale III (WAIS III) and the Minnesota Multiphasic Personality Inventory 2 (MMPI 2), which were administered to the plaintiff, his review of court documents in this case and the state court proceedings, review of the opinions of Dr. Wiggins and Dr. Simonds, Department of Correction incident and investigative reports, emails and memos, the videotape of defendant DeBeers and other documents.

Dr. Bar-Av opines that the plaintiff had a longer than usual period of recovery from the anesthesia, that her ability to think rationally was greatly impaired for at least 24-48 hours following her discharge and that "she was not able to render consent for the sexual activity initiated and executed by Mr. DeBeers." (Piontek Affidavit, Exh. C at 8.) He further opines that the plaintiff had been sexually assaulted and raped. Id. at 8-9. He also states in his report that based on his review of the videotape, the defendant "would only be comfortable having sex with a woman who is in no position to say no, verbally or physically." Id. at 6.

In his opinion, Dr. Bar-Av states that the plaintiff suffered emotional traumas because of the rape by a co-worker; the betrayal of a female co-worker, a social worker, who related confidential information provided by the plaintiff to the warden; and the interview conducted by a panel of three "hostile" men from the Racine Correctional Facility during which she accused of masterminding the attack on herself as part of an extortion scheme. Based on

-7-

his interview with the plaintiff, it is his professional opinion that the plaintiff's symptoms are consistent with a diagnosis of Post Traumatic Stress Disorder and that she suffers from depression.

Dr. Bar-Av is a psychologist and is able to testify about the plaintiff's emotional state. The problem, however, is that he is basing his opinion as to her emotional trauma in large part on matters that are in dispute and at issue in this case. For example, he opines that the plaintiff suffered emotional trauma because she was "raped" by a co-worker. The issue of what transpired on October 5, 2001, and whether or not there was consent for any sexual encounter are factual issues for the jury's determination. Moreover, although Dr. Bar-Av reviewed numerous documents, his opinion about the events of October 5, 2001 is based on his interview of the plaintiff who he found to be a "credible reporter both of her personal history and of the events of October 5, 2001." Id. at 2.

In United States v. Whitted, 11 F.3d 782 (8th Cir. 1993), a case involving sexual abuse, the court found that the expert doctor could testify about the alleged victim's bedwetting, nightmares, and inability to sleep at night. However, the court found that the doctor could not testify about his diagnosis of "repeated sexual abuse." Id. at 786. The court concluded that because his diagnosis rested solely on his acceptance of the victim's account of the alleged abuse, the testimony amounted to an assessment of the victim's truthfulness. "It was for the jury, not an expert clothed in medical garb, to assess the [victim's] credibility." Id. Dr. Bar-Av's opinion about the "sexual assault/rape" likewise is based on the plaintiff's account of the events of October 5, 2001. Such testimony is not admissible expert opinion. Id.; see also, Hall, 93 F.3d at1344.

-8-

With respect to the plaintiff's ongoing emotional trauma, there is no indication that Dr. Bar-Av considered and rejected whether other factors may have contributed to the plaintiff's emotional trauma and depression. The basis of much of Dr. Bar-Av's proposed testimony is grounded, not on his expertise or scientific analysis, but on the plaintiff's version of the events of October 5, 2001, and her resultant experiences at work. Dr. Bar-Av also merely relies on Dr. Wiggens' report that the plaintiff lacked the ability to consent to sexual activity. There is no indication that he has any knowledge of pharmacology or the effects of anesthesia on patients.

Dr. Bar-Av's opinion as to the defendant's sexual ability also is not based on any scientific data or information, but rather solely on the Dr. Bar-Av's review of a videotape "confession." He has not provided any scientific basis or analysis for his opinion. Providing only an ultimate conclusion with no analysis is not helpful to the jury. See Huey, 165 F.3d at 1087.

In light of the foregoing, Dr. Bar-Av's testimony will be limited to those opinions which are based on his expertise and grounded on scientific data and analysis. Any opinions based on his subjective belief or unsupported speculation are properly excluded by the court in fulfilling its gatekeeping function. See Daubert 509 U.S. at 593). "[A]n expert's opinion is helpful only to the extent the expert draws on some special skill, knowledge, or experience to formulate [his] opinion." Hall, 93 F.3d at 1343 (quoting United States v. Benson, 941 F.2d 598, 604 (7th Cir. 1991).

Dr. Bar-Av's psychologist's license to practice was revoked by Psychology Examining Board on November 18, 2003, for his sexual relationship with a client. If Dr. Bar-Av testifies at trial, the defendant will be free to cross-examine him about his credentials.

Linda Ledray, RN, PhD., reviewed various documents such as the January 14, 2002, court record, the Endoscopy Department report, a police report, the Statement of Facts, and the reports of Drs. Wiggins and Bar-Av. She did not interview the plaintiff and did not review her medical history.

Dr. Ledray opines that this case "was clearly a drug-facilitated sexual assault." (Piontek Affidavit, Exh. D. at 1). She states that the plaintiff was clearly incapacitated as a result of the drugs she was given on October 5, 2001, and that the defendant "clearly had knowledge of her incapacitation." Id. She states that delayed reports are "extremely common" in drug-facilitated sexual assaults when the victims do report. Id. According to Dr. Ledray, the facility social worker clearly breached patient confidentiality and the questioning by the warden likely added to the plaintiff's fear, anxiety, stress and trauma. Dr. Ledray provides no analysis or scientific data to support her opinions. Moreover, she acknowledges that the facts referenced in her opinion are "assumed facts based upon the findings expected from the actual evidence." Id. at 2. Thus, the reliability of any opinion is merely speculative at this juncture. Her testimony fails to meet the requirements of Daubert. Therefore, Dr. Ledray's testimony will not be permitted at trial.

As noted, Dr. Lisa Simonds, the plaintiff's treating physician, will not be testifying as an expert witness. Therefore, the defendant's motion in limine with respect to Dr. Simonds will be denied as moot.

In sum, for the reasons stated herein, the defendant's motion in limine will be granted in part and denied in part with respect to the testimony of Dr. Wiggins and Dr. Bar-Av as stated herein. The defendant's will be granted with respect to the testimony of Dr. Ledray and denied as moot with respect to the testimony of Dr. Simonds.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the defendant's motion in limine (Docket #135) will be granted in part and denied in part as stated herein.

Dated at Milwaukee, Wisconsin this 4th day of August.

BY THE COURT:


s/Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge